WILGEES (LAW v.). See Case No. 8,132.

WILGUS (MILTON v.). See Case No. 9,622.

## Case No. 17,658.

### The WILHELMINA.

[3 Ben. 110.] [1]

District Court, E. D. New York. Dec., 1868.

CHARTER AND BILL OF LADING—DAMAGE TO CARGO —BLOWING—BURDEN OF PROOF.

1. Where a vessel was chartered, in Buenos Ayres, to bring a cargo of hides to New York, the charter containing this clause: "The charterer furnishing the lining hides and bones for dunnage only," and, after the vessel was loaded, ordinary bills of lading were made out, consigning the cargo to the libellant, and, on delivery of cargo, part of it was found to be damaged, *held*, that, on the facts, the injury was caused by blowing, and that the dunnage was insufficient.

2. Where it appears that damage has been caused by an ordinary occurrence on a sea voyage, the burden of proof is on the ship, to show that proper precautions were taken to guard against the danger.

3. The clause above set forth had no effect to relieve the ship from the duty to properly protect the cargo, and the consignees, not being parties to the charter, but claiming under clean bills of lading, would not be bound by that clause.

4. The ship was liable for the damage.

In admiralty.

BENEDICT, District Judge. This action is brought to recover the amount of damage caused to a cargo of hides, while being transported in the bark "Wilhelmina," from Buenos Ayres to this port. The vessel was chartered in Buenos Ayres, by H. J. Ropes, by a charter party, which provides that the vessel should receive from the charterer, "say 2,000 salted hides, and the balance of cargo of dry hides, the charterer furnishing the lining hides and bones for dunnage only." The salted and dry hides were to pay freight; the lining hides and bones were to be freight free.

This cargo having been laden, bills of lading were issued for it, in the ordinary form, according to which it was to be delivered in New York, to the libellants, R. W. Ropes & Co., in like good order, dangers of the seas excepted: they paying freight for the salted and dry hides only. Separate bills of lading were issued for 160 lining hides, and for the shin bones, declaring them to be freight free. The bones were stowed in the bottom of the ship, from forward to aft; upon these were placed the salted hides, also running from forward to aft, and, upon

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

these were stowed the dry hides, filling the vessel, all being in good order when received. Upon the discharge of the vessel, in New York, a few wet hides came out, at the early part of the discharge, which were taken from the top of the cargo, aft, and which had beans sticking upon them; and, again, at the latter part of the discharge, damaged hides were reached. These, to the number of some 2,500, lay in the wings, on both sides, midships, and were wet with sea water, and seriously injured.

The real controversy, in the case, relates to these last-mentioned hides, inasmuch as it is quite manifest that the injury to the few which came out first, from near the after-hatch, was caused by the starting of the hatch in heavy weather, during the voyage, which permitted some water to pass on the hides below, carrying with it some beans, which had been placed near the hatch over the cargo. As to the injury to the other portions of the cargo. I think it clear upon the proofs, that it did not arise from leaks in the decks, or top sides. There was some starting of these seams, but no amount of water appears to have passed through upon the cargo directly, for the top portions of the cargo, midships, were not wet. The damage was below, at the bottom of the dry hides, and above the salted hides. Nor does it appear that the bark accumulated any considerable quantity of water in her bilges. The only entry in the log, upon the subject, is on one day, where it is noted that "Ship made more water than usual—kept the pumps a-going;" and no witness pretends that the pumps did not keep the water down, or that there was any considerable amount of water in her at any time. She was a new vessel. The damage was not caused by water from the decks, but by blowing. This is evident, from the position of the damaged hides, which were next the ceiling, and about the bilges. Now, blowing is one of the ordinary occurrences on a sea voyage, and injury from it can be provided against, by proper dunnage. Bearse v. Ropes [Case No. 1,192]. The burden of proof, therefore, rests upon the claimant to show that proper precautions were taken to guard against this danger. This has not been shown. On the contrary, it clearly appears that the dry hides were stowed with lining hides nailed between them and the sides of the ship, but with no or at most but very little wood dunnage between the hides and the ceiling. This appears from the testimony of persons who saw the vessel discharged: of a stevedore, who loaded the cargo in part, and refused to continue, because he was not furnished with dunnage: by the testimony of the master, who, although often on board while the vessel was loading, is unwilling to say that any wood dunnage was used for the dry hides. The evidence, upon this point, produced by the libellant, clearly outweighs the evidence introduced by the claimant, to show the pres-

ence of wood dunnage. Indeed, the attempt, on the part of the claimant, to prove that the cook, during the discharge, used up the wood, as fast as it was thrown out, to heat his galley, shows that there was an insufficient quantity for such a cargo, in such a vessel.

The use of wood dunnage, inside of the lining hides, to protect hides from damage by blowing, is proved to be a common precaution, and the absence of such a precaution is negligence, which renders the ship liable for any damage resulting therefrom. But, it is said that in this case, the charter party provided that the charterers were to furnish lining hides, and bones for dunnage, and the ship, having used all that were furnished for that purpose, is not responsible for the deficiency in quantity. To this argument, there are two sufficient answers: First, that the consignees are not shown to be parties to the charter party. They claim under clean bills of lading, which make no allusion to dunnage, or to a charter party. And, second, that the clause referred to, in the charter party, has no effect to relieve the ship from the duty to properly protect the cargo. I think the clause, fairly construed, is only a provision that the ship shall take, free of freight, and be permitted to use for dunnage such lining hides and bones or horns as may be furnished and can be so used, and that it in no way relieved the ship from the obligation to properly stow the cargo with proper dunnage.

My conclusion, therefore, is, that the ship must be held liable for the injury caused to the dry hides on board, excluding those which were discharged from about the after hatch.

Let there be a reference to ascertain the number of those hides, and the amount of damage thereto.